UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
DOCKET NO. 5:18-cv-00141-FDW

| STEPHEN SHAWN SMITH, | ) | |
|---|---|---|
| Appellant, | ) | |
| vs. | ) | |
| | ) | ORDER |
| MARCIA CARLSON SMITH, | ) | |
| Appellee. | ) | |

THIS MATTER is before the Court on appeal of Stephen Shawn Smith of the order in the adversary proceeding in bankruptcy court (Case No. 13-50927; Adv. Proc. No. 15-5034) finding that Appellant's 401(k) account is nondischargeable under 11 U.S.C. § 523(a)(5). For the reasons set forth below, the Order of the bankruptcy court is AFFIRMED.

## BACKGROUND

Appellee Marcia Carlson Smith ("Appellee") married Appellant Stephen Shawn Smith ("Appellant") on May 3, 1986, and separated from Appellant on November 1, 2011. (Doc. No. 1-3 at 2). Before divorcing, Appellee filed a "Complaint for Equitable Distribution, Alimony and Post-Separation Support against [Appellant] on January 30, 2012 in the District Court Division of the County of Lincoln, State of North Carolina, File No. 12-CVD-129." Id. Appellant filed a voluntary petition under Chapter 13 of the United States Bankruptcy Code on October 30, 2013. Id. The bankruptcy court confirmed Appellant's Chapter 13 plan on March 19, 2014. Id. On December 2, 2014, Judge Meredith A. Shuford, the presiding district court judge in Lincoln County, entered an Order of Equitable Distribution ("ED Order"). Id. at 3. On May 4, 2015, Judge Shuford entered an Order of Alimony ("Alimony Order"). Id. Appellee filed an adversary

1

proceeding on December 18, 2015. Id. at 6. On January 20, 2016, Appellant answered Appellee's adversary complaint, requesting that the bankruptcy court determine whether "all claims asserted [in the adversary proceeding] are ED in nature and are fully discharged upon successful completion of the plan payments." (Doc. No. 5 at 6). On July 11, 2016, the bankruptcy court entered an Order instructing the parties to petition Judge Shuford "for a hearing to request a Supplemental Order regarding her previous orders regarding Equitable Distribution and Alimony to address issues of the nature of the distribution of the 401K proceeds." Id. at 6-7. On March 20, 2017, Judge Shuford entered a Supplemental Order adopting the following findings supplemental to the orders regarding Equitable Distribution and Alimony to address the nature of the 401K proceeds:

   a. In determining the duration of Husband's alimony obligation, the court factored in the amount of money that would be available to the Wife on a monthly basis upon her retirement from her share of Husband's 401(k).
   b. When entering the Order of Alimony, the court took into consideration the fact that Wife would be receiving $494.00 per month upon retirement from Husband's 401(k) via a qualified domestic relations order. Had the court known that said funds would not be available to Wife then other provisions would have been made for Wife's support.
   c. The Order of Equitable Distribution and Order of Alimony were integral to each other in that the court took into consideration funds available to Wife pursuant to the Order of Equitable Distribution (Husband's 401(k), her social security benefits, etc.) when determining Wife's need for support – both the amount she needed and the length of time she needed it.
   d. The 401(k) benefits which were to accrue to Wife were in the nature of support and were considered as such by the court.
   e. In determining the amount of Husband's alimony obligation, the court factored in the amount of money that would be available to the Wife on a monthly basis from her share of Husband's 401(k).
   f. If Wife does not receive her share of Husband's 401(k) as set forth in the equitable distribution order due to the same being discharged by the bankruptcy court, that circumstance would be considered material by this court and could constitute a basis for a modification of Husband's alimony obligation.

(Doc. No. 1-3 at 8-9). Appellant appealed Judge Shuford's Supplemental Order. (Doc. No. 5 at 8). On February 20, 2018, the North Carolina Court of Appeals dismissed Appellant's appeal because the Supplemental Order constituted an interlocutory order not subject to its review. Id.

On January 10, 2018, the bankruptcy court granted Appellant's Motion to Approve Early Payoff of Chapter 13 Plan. Id. Appellant completed his payment plan and subsequently requested that the bankruptcy court consider the 401(k) property award as a general, unsecured and therefore dischargeable claim. Id. The bankruptcy court set Appellee's adversary proceeding for hearing on May 11, 2018. Id. The bankruptcy court entered Findings of Fact, Conclusions of Law, and an Order Granting Judgment to the Appellee on August 24, 2018, and "[a]djudged that the award of $177,927.94 of the [Appellant's] 401(k) account to the [Appellee] by the District Court Division for Lincoln County, North Carolina is a non-dischargeable domestic support obligation." Id. 8-9. On August 30, 2018, Appellant filed his Notice of Appeal. (Doc. No. 1).

## STANDARD OF REVIEW

This appeal is brought pursuant to 28 U.S.C. § 158(a) and Rule 8001 of the Federal Rules of Bankruptcy Procedure. The district court may affirm, modify, or reverse a bankruptcy judge's order, or remand with instructions for further proceedings. See 28 U.S.C. § 158(a) (2012); Fed. R. Bankr. P. 8001, 9002(2). The conclusions of law of the bankruptcy court are reviewed *de novo*. Educational Credit Management Corp. v. Frushour (In re Frushour), 433 F.3d 393, 398 (4th Cir. 2005); Scholossberg v. Barney, 380 F.3d 174, 178 (4th Cir. 2004); In re Catron, 164 B.R. 912, 915 (E.D. Va. 1994). Findings of fact of the bankruptcy court are set aside only where the findings are clearly erroneous. In re Frushour, 433 F.3d at 398. "A [factual] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573 (1985) (citation omitted); see also In re Regional Building Sys., Inc., 320 F.3d 482, 485 (4th Cir. 2003). "In an appeal from the bankruptcy court, this Court does not sit in a position to reweigh the evidence and cannot reverse the bankruptcy court just because this

Court, had it been sitting as the trier of fact, might have taken a different view of the evidence." In re Gallagher, 2011 WL 1130878, at *2 (W.D.N.C. March 25, 2011). "Accordingly, 'as long as the bankruptcy judge's inferences are reasonable and supported by the evidence, they will not be disturbed.'" Id. (citation omitted).

**DISCUSSION**

Appellant presents two issues on appeal: (1) "Whether the Bankruptcy Court erred in adjudging Appellant's 401(k) account is a non-dischargeable domestic support obligation . . .;" and (2) "Whether the Bankruptcy Court possessed the authority to order a distribution from the Appellant's 401(k) account." (Doc. No. 5 at 5). The Court will address each of these in turn.

A. Dischargeability of Appellant's 401(k) Account

Appellant's first assignment of error is that the bankruptcy court reached the mistaken factual conclusion that the state court intended that the 401(k) was for the purpose of alimony, maintenance or support.

After successfully completing a Chapter 13 plan, a debtor receives discharge of his debts, except those that are designated to meet a "domestic support obligation. 11 U.S.C. §§ 1328(a); 523(a)(5). Section 101(14A) defines "domestic support obligation" as a debt that is (A) recoverable by a former spouse, (B) in the nature of alimony, maintenance, or support of such former spouse, and (C) established by a separation agreement, divorce decree, or property settlement agreement." 11 U.S.C. § 101(14A). The determination of whether Appellant's 401(k) is in the nature of alimony, maintenance, or support is a fact specific inquiry. In re Johnson, 397 B.R. 289, 296 (Bankr. M.D.N.C. 2008). State law may provide guidance on the issue but federal bankruptcy law, not state law, determines whether a debt is in the nature of support. See In re Long, 794, F.2d 928, 930 (4th Cir. 1986) (citation omitted); In re Genovese, No. 95-1984, 1996

4

WL 516160, at *2 (4th Cir. Sept. 12, 1996) (citation omitted). Because the analysis of dischargeability under section 523 must begin with the assumption that dischargeability is favored under the Code, the complaining spouse, Appellee, has the burden of proof to demonstrate by a preponderance of evidence that the obligation at issue is "actually in the nature of alimony, maintenance, or support." See Tilley v. Jessee, 789 F.2d 1074, 1077 (4th Cir. 1986) (citations omitted).

"Section 101(14A) specifically notes that the debt may not be expressly noted or designated as support, and therefore, an inquiry as to the intention of the parties or the state court judge is required." In re Bowen, No. 09-06106-RDD, 2010 WL 1855871, at *2 (Bankr. E.D.N.C. May 10, 2010). Other bankruptcy courts in the Fourth Circuit have held that when the claim arises from a court order, as it does in the present case, "the issue is whether the court issuing the order intended for the obligation to be in the nature of support." In re Baker, No. 12-01090-SWH, 2012 WL 6186683 *4 (Bankr. E.D.N.C. Dec. 12, 2012); see In re Bowen, 2010 WL 1855871 at *2 (considering the findings made by the state court judge to determine whether that judge intended for the obligation arising from the court order to be in the nature of support). To ascertain the intent underlying a state court decree, it is appropriate and sufficient for the bankruptcy court, the trier of fact, to focus attention on the pleadings, orders, the transcripts of the court proceedings, and on the language of the decree itself. See In re McCauley, 105 B.R. 315, 319 (E.D. Va. 1989) (citing West v. Bank of Commerce & Trusts, 153 F.2d 566 (4th Cir. 1946)). However, the reviewing court must not rely only on the label used by the state court but must look beyond the label to examine whether the debt actually is in the nature of support or alimony. In re Johnson, 397 B.R. at 296.

Courts in the Fourth Circuit have articulated an "unofficial" test for the intent inquiry, which provides for the court to look at: (1) the actual substance and language of the agreement or

5

order, (2) the financial situation of the parties at the time of the agreement or order, (3) the function served by the obligation at the time of the agreement or order (i.e. daily necessities), and (4) whether there is any evidence of overbearing at the time of agreement or order that should cause the court to question the intent of a spouse. Id. at 297.

The first factor to be considered is the actual substance and language of the state court Orders. "When considering the first factor, the Court is not bound by the labels used in an agreement [or order] and must look behind them to determine the true nature of an obligation based on the details of the entire agreement [or order]." In re Leviner, No. 16-31885, 2017 WL 3986500, at *5 (Bankr. W.D.N.C. Sept. 8, 2017) (citing Genovese, 1996 WL 516160 at *3). Other key factors courts consider regarding the language of the agreement are the number and frequency of payments as well as whether the obligation terminates upon the death or remarriage of the recipient. Id. at 6. A long-term obligation to make regular monthly payments is more likely to be considered support. Id. (citations omitted). An obligation that terminates on the death or remarriage of the obligee is likely to have been intended for support. Id. (citations omitted).

The second and third factors—the financial circumstances of the parties and the function served by the obligation when the Orders were entered by the state court—are "usually the most important factors for determining the intent of the parties [or Orders]." In re Leviner, 2017 WL 3986500 at *6 (citing In re Yeates, 807 F.2d 874, 879 (10th Cir. 1986)). "If a [former] spouse would have difficulty providing a basic need such as housing for herself without the obligation in question, then the obligation is mostly in the nature of alimony, maintenance, or support, and therefore a nondischargeability claim." Id. The bankruptcy court may consider factors such as whether one spouse was employed in a less remunerative position than the other, the stability of the income of the former spouses, the length of the marriage, and standard of living during the

6

marriage. See In re Catron, 164 B.R. at 919.

The fourth factor, evidence of overbearing, considers reasons why the court may question the intent of a party. In re Leviner, 2017 WL 3986500 at *6 (citing In re Catron, 164 B.R. at 919). The bankruptcy court considers whether the terms of the agreement grossly favor one spouse over the other or leave one spouse with virtually no income, the statements of the former spouses in court, and the age and health of the spouses. In re Catron, 164 B.R. at 919.

The factor test in In re Johnson provides a sound and effective framework for a bankruptcy court to determine the intent of the state court. There was no error in using that framework here. Appellant's challenges instead involve whether the bankruptcy court's factual finding was clearly erroneous. Therefore, to resolve Appellant's first assignment of error—that the bankruptcy court erroneously concluded that Appellant's 401(k) account is a non-dischargeable domestic support obligation—the Court must review the bankruptcy court's individual finding of fact on the issue of the state court's intent based on three factors.[1]

Here, the bankruptcy court began with its analysis of the second and third factors, noting that they are usually the most important, and found that they strongly support Appellee's position. (Doc. No. 1-3 at 15). The bankruptcy court, citing to evidence in the record and the state court's findings, concluded that,

> [Appellant] was clearly the breadwinner during the marriage by a significant margin. In fact, the State Court found that [Appellee's] *annual* employment income only rivaled [Appellant's] *monthly* income from employment during one 12-month period of the marriage. [Appellee] owned and operated a daycare business out of her home, but the State Court paints a dismal picture of the financial status of the business, as it was never profitable and had no value. [Appellant] also appeared to have better prospects for the future, as his employment and significant income appeared to be stable and he had retirement accounts on which to rely. [Appellee], by contrast, had no retirement or investment accounts, and the State Court did not

---

[1] The bankruptcy court ultimately found that the fourth factor is not relevant and provided no further analysis for this Court to review. (Doc. No. 1-3 at 20). The Court also notes that Appellant makes no arguments in opposition to the bankruptcy court's conclusion as to the fourth factor.

expect her to earn more than the minimum wage.

Id. (emphasis in the original).[2] While the bankruptcy court conceded that the failure of the obligation to terminate upon marriage or death is a factor that makes the payment less likely to be support, the bankruptcy court noted that this factor is not an issue here as the obligation was to be entered as a QDRO and there would be nothing to terminate if Appellee died or got remarried. Id. at 19. Furthermore, the bankruptcy court found that the failure of the 401(k) payments to stop at Appellee's death or remarriage was consistent with other cash payments provided for in the Alimony Order. Id. Based on these facts, the bankruptcy court determined factors two and three weigh in favor of nondischargeability. See id.

Deferring to the bankruptcy court's factual findings, as well as the resolution of what weight to give the evidence, this Court finds that the record amply supports the facts as found by the bankruptcy court concerning factors two and three of the dischargeability determination. In assessing the parties' financial circumstances and the function served by the obligation, the bankruptcy court referenced evidence in the record that the parties had been married twenty-five years; Appellant was the primary breadwinner while Appellee ran a struggling business; and Appellee had no retirement or investments and could not have been expected to earn more than minimum wage in the future. Upon review of the relevant factors and the analysis of the bankruptcy court, the Court finds that there is no clear error.

The bankruptcy court then analyzed factor one—the substance and language of the Orders. Id. at 18. The bankruptcy court discussed the language in the ED Order and Alimony Order, observing that "[t]he state court awarded a portion of [Appellant's] 401(k) to [Appellee] in the ED Order and only references the award in the Alimony Order, [which] suggest[s] that it might be a

---

[2] The Court notes that Appellant does not dispute these findings. (See Doc. No. 5 at 13).

domestic support obligation." Id. at 13. However, as the bankruptcy court correctly noted, labels are not determinative, and it is the role of the bankruptcy courts to determine the true nature of domestic obligations. See In re Johnson, 397 B.R. at 296

Accordingly, the bankruptcy court reviewed the Alimony Order, noting that "the language of paragraphs 24 through 26 of the Alimony Order implies that the state court intended to replace the support provided by the monthly alimony payments at least in part with the distributions that [Appellee] would receive in retirement pursuant to the QDRO." Id. at 17-18. The bankruptcy court evaluated the state court's use of the QDRO as the vehicle for the distribution and found that its use, as opposed to cash or another type of property division, provided evidence that the function of the obligation is to support Appellee. Id. The bankruptcy court, therefore, interpreted the state court judgments on alimony and equitable distribution as showing that Appellee earned far less than Appellant and had no retirement to support herself and maintain a minimum standard of living in retirement. Id. at 16. The bankruptcy court reviewed the Supplemental Order and found that it confirmed its analysis of the Alimony Order that the 401(k) was intended as support. Id. at 18. Specifically, the bankruptcy court noted that the language in the Supplemental Order made clear that the state court considered the monthly payments that Appellee would receive from the QDRO when it determined that the monthly alimony payments would end at Appellee's retirement. Id. at 16-17. Based on its analysis of the language of the state court Orders, the bankruptcy court ultimately concluded that "[t]he Alimony Order implies that the 401(k) award was intended as support despite its inclusion in the ED Order, and the Supplemental Order makes the implication explicit." Id. at 19. Based on this Court's review of the evidence and the analysis of the bankruptcy court, the Court finds that there is no clear error.

Appellant makes two primary arguments regarding this first assignment of error: (1) the

bankruptcy court committed a clear error by relying on the state court's improper consideration of support obligations in equitable proceedings, and (2) additional factors and relevant case law support his claim that the 401(k) award is subject to discharge. The Court will address Appellant's arguments in turn.

The Court finds that Appellant's argument that the state court's consideration of support obligations arising out of the subject marriage in equitable distribution proceedings violated N.C. Gen. Stat. § 50-20(f) is without merit. (See Doc. No. 5 at 10). Under North Carolina law, "[t]he [district] court shall provide for an equitable distribution without regard to alimony for either party . . . ." N.C. Gen. Stat. § 50-20(f). Here, the state court entered the ED Order on December 2, 2014, and then subsequently entered the Alimony Order on May 4, 2015. Furthermore, Appellant explicitly acknowledges that the state court did not make regard of Appellee's alimony when it entered the ED Order. (See Doc. No. 5 at 10). Thus, the Court finds that the state court acted in accord with section 50-20(f).

Appellant next appears to argue that the reach of section 50-20(f) extends to the state court's Supplemental Order finding that "[t]he 401(k) benefits which were to accrue to [Appellee] were in the nature of support and were considered as such by the court". (See Doc. No. 5 at 10-11). Thus, according to Appellant, the bankruptcy court's reliance on this language in the Supplemental Order constitutes a clear error. See id. at 13. The Court finds that this argument is similarly without merit. In interpreting section 50-20(f), the North Carolina Court of Appeals has previously construed section 50-20(f) as a requirement regarding the sequence in which equitable distributable distribution orders and alimony orders are to be entered. See Shoffner v. Shoffner, 371 S.E.2d 749, 752 (N.C. Ct. App. 1988) (citing Capps v. Capps, 318 S.E.2d 346, 348 (N.C. Ct. App. 1984)); see also Wilkins v. Wilkins, 432 S.E.2d 891, 899 (N.C. Ct. App. 1993). A

10

Supplemental Order, entered by the state court upon request by the parties for clarification of its ED and Alimony Orders, has no relationship to this requirement.

Appellant's second challenge to the Bankruptcy Court's finding of nondischargeablity is that there are additional factors that support his claim that the 401(k) award is subject to discharge. (See Doc. No. 5 at 8-16). However, it is not the role of this Court to reweigh the evidence and substitute its judgment for that of the bankruptcy court. See In re Gallagher, 2011 WL 1130878 at *2. Instead, this Court is tasked with reviewing the bankruptcy court's findings to determine if there is clear error. As explained above, this Court finds that the conclusion of the bankruptcy court is not clearly erroneous. Indeed, the bankruptcy court's finding is reasonable and supported by evidence in the record. Accordingly, the determination of the bankruptcy court is affirmed.

B. Bankruptcy Court's Authority to Order Distribution from Appellant's 401(k)

Appellant's second assignment of error is that the bankruptcy court did not possess the jurisdictional authority to order a distribution from the Appellant's 401(k) account. (See Doc. No. 5 at 5). The Court disagrees.

Pursuant to 28 U.S.C. § 1738, "[state court] judicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken. 28 U.S.C. § 1738 (1948). Under this full faith and credit statute, a bankruptcy court is required to give "*the same effect* to the judgment as the rendering court would have given it." In re Heckert, 272 F.3d 253, 259 (4th Cir.2001) (emphasis in original). A judgment is not given the same effect if a bankruptcy court either reverses, or modifies, the judgment. Id. In Heckert, the case cited by Appellant, the Fourth Circuit held that the bankruptcy court's entry of its own judgment to replace the state court judgment was barred under § 1738. There, the state court entered a prior $7,000 judgment against the plaintiff in a suit

for wrongful discharge. Id. at 255-56. In an adversary proceeding to determine the dischargeability of the debt, the Fourth Circuit found that the bankruptcy court "not only changed the interest rate, they changed the initial statute of limitations on collection of the state judgment . . . ." Id. at 259. Accordingly, the Fourth Circuit found that the district court and bankruptcy court failed to accord the state judgment the full faith and credit required by § 1738. Id. However, this Court finds that the instant case is distinguishable from Heckert.

In the instant case, the Court finds that the bankruptcy court did not exceed its authority by ordering distribution from Appellant's 401(k) account because the court did not replace the state court's judgment with its own. Here, the bankruptcy court ordered that "$177,927.94 of [Appellant's] 401(k) account shall be distributed to [Appellee] within 60 days of the entry of this order via Qualified Domestic Relations Order *consistent with the State Court Orders and the State Court's procedures*." (Doc. No. 1-3 at 23) (emphasis added). Because the bankruptcy court ordered distribution consistent with the state court Orders, this Court finds that the bankruptcy court has given the same effect to the judgment as the rendering court would have given it as required under Heckert and § 1738. Accordingly, the Court finds that the order of distribution was proper.

## CONCLUSION

IT IS THEREFORE ORDERED that the Order entered by the bankruptcy court is AFFIRMED. The Clerk is respectfully directed to CLOSE this case.

IT IS SO ORDERED.

Signed: January 3, 2019

Frank D. Whitney
Chief United States District Judge